IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **ANTONIO PASULO** | § | **PETITIONER** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:26mc163-HSO-BWR** |
| | § | |
| | § | |
| **WELLS FARGO BANK, N.A.** | § | **RESPONDENT** |

## ORDER DISMISSING PETITIONER'S PETITION [1] TO VACATE ARBITRATION AWARD WITHOUT PREJUDICE FOR LACK OF SUBJECT-MATTER JURISDICTION

Pro se Petitioner Antonio Pasulo ("Petitioner" or "Pasulo") asks the Court to vacate an arbitration award, specifically the arbitrator's dismissal of his claims against Respondent Wells Fargo Bank, N.A. *See* Petition [1]. On June 4, 2026, the Court entered an Order [2] to Show Cause why the Petition [1] should not be dismissed without prejudice for lack of subject-matter jurisdiction. Because Petitioner has failed to demonstrate that the Court possesses subject-matter jurisdiction, the Petition [1] will be dismissed without prejudice.

## I. BACKGROUND

According to the Petition [1], the arbitrator dismissed Pasulo's claims against Respondent Wells Fargo Bank N.A. ("Respondent" or "Wells Fargo"). *See* Petition [1] at 2. He asks the Court to vacate that dismissal pursuant to 9 U.S.C. § 10. *See id.* Because he had not demonstrated the existence of subject-matter jurisdiction, the Court ordered Pasulo to show cause by June 22, 2026, why his Petition [1]

should not be dismissed without prejudice for lack of subject-matter jurisdiction.

*See* Order [2].  Pasulo responds that the parties are of diverse citizenship, as he is a

citizen of Florida and Wells Fargo is a citizen of South Dakota.  *See* Resp. [3] at 1-2.

He also maintains that the amount in controversy is satisfied because it exceeds

$75,000.00.  *See id.* at 2.  According to Pasulo, "[t]he object of the case is not only the

$41,450 identified in the arbitration dismissal," because "if the arbitration dismissal

is vacated, the underlying controversy places more than $75,000 at stake, including

actual damages, consequential damages, potential punitive damages if legally

available based on the alleged fraud and willful conduct, and other recoverable

relief."  *Id.*

Pasulo attaches to his Response [3] a packet of exhibits consisting of 269

pages.  *See* Ex. [3-1]; Ex. [3-2] (broken into two docket entries by the Clerk due to

exhibit size).  According to the "Procedural Summary for Exhibit,"

- Antonio Pasulo initially pursued claims against Wells Fargo related to alleged unauthorized withdrawals and fraud involving Wells Fargo accounts.
- Wells Fargo compelled or pursued arbitration, which proceeded as [American Arbitration Association ("AAA")] Case No. 01-25-0004-1674.
- The AAA later issued that the arbitration matter was closed as dismissed, rather than after an evidentiary award to Petitioner.
- The federal filing seeks review/vacatur under the Federal Arbitration Act and asserts diversity jurisdiction, material factual disputes, and the need for an evidentiary hearing.
- This updated exhibit includes the federal case materials, AAA closure notice, police/fraud records, and prior Wells Fargo fraud claim evidence.

Ex. [3-1] at 2.

The attachments reflect that Pasulo filed a complaint against Wells Fargo in the County Court of Harrison County, Mississippi, First Judicial District, on December 22, 2023, *see id.* at 80, seeking "to obtain his money that has been taken from him," *id.* at 81. Pasulo sought judgment from Wells Fargo in the State Court Case "in the amount of $50,000, court costs plus any additional costs and fees which may accrue in this matter." *Id.* at 82. Wells Fargo moved to compel arbitration, *see id.* at 102-13, which was apparently granted, and arbitration proceeded before the AAA, *see id.* at 94-97 (Pasulo's response to Wells Fargo's counterclaim in arbitration). According to the AAA closure notice, it "closed [its] case as dismissed" on April 7, 2026. *Id.* at 10. Pasulo then instituted this miscellaneous action, asking the Court to vacate the dismissal pursuant to 9 U.S.C. § 10. *See* Petition [1] at 2.

## II.  DISCUSSION

A.    Relevant Legal Authority

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., "authorizes a party to an arbitration agreement to seek several kinds of assistance from a federal court" on limited grounds, which include vacatur or modification of awards. *Jules v. Andre Balazs Props.*, 146 S. Ct. 1209, 1215 (2026) (quotation omitted) (citing 9 U.S.C. §§ 10(a), 11). But "federal jurisdiction is not always a foregone conclusion. For a federal court to have jurisdiction over an arbitral dispute, it is not enough that the dispute implicates the FAA." *Id.* The FAA does not create federal jurisdiction, which must come from another source, such as federal diversity jurisdiction under

3

28 U.S.C. § 1332 or federal question jurisdiction under 28 U.S.C. § 1331. *See id.* at 1215-16.

In this case, Petitioner contends the Court has diversity jurisdiction under § 1332, *see* Petition [1] at 1, which confers original subject-matter jurisdiction where the matter in controversy exceeds $75,000.00 and is between citizens of different states, *see* 28 U.S.C. § 1332(a). As the party invoking the federal forum, Petitioner bears the burden of establishing diversity jurisdiction. *See Bynane v. Bank of New York Mellon for CWMBS, Inc. Asset-Backed Certificates Series 2006-24*, 866 F.3d 351, 356 (5th Cir. 2017).

To establish the amount in controversy, it must exceed $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). The amount in controversy is the "value of the right to be protected or the extent of the injury to be prevented." *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (quotation omitted). If the pleadings demonstrate that the damages at issue fall below this jurisdictional threshold, merely pleading an amount in controversy larger than $75,000.00 is not sufficient. *See Stringer v. Frito-Lay Corp.*, No. 22-60518, 2023 WL 5235217, at *2 (5th Cir. Aug. 14, 2023) (per curiam).

B.    Analysis

Pasulo now alleges that complete diversity of citizenship exists, *see* Resp. [3], but the Court still questions whether the amount-in-controversy requirement is satisfied, *see* 28 U.S.C. § 1332(a). The Petition [1] states that during arbitration, Petitioner "presented evidence that approximately $41,450 was withdrawn [from

4

his Wells Fargo account] without his knowledge or authorization," Petition [1] at 2 (emphasis removed), but then he makes the conclusory assertion that "the amount in controversy exceeds $75,000," *id.* at 1. The facts pled are insufficient to show that the amount in controversy is satisfied. *See Stringer*, 2023 WL 5235217, at *2.

Pasulo now asserts that "[t]he object of the case is not only the $41,450 identified in the arbitration dismissal," because "if the arbitration dismissal is vacated, the underlying controversy places more than $75,000 at stake, including actual damages, consequential damages, potential punitive damages if legally available based on the alleged fraud and willful conduct, and other recoverable relief." Resp. [3] at 2. Essentially, Pasulo invites the Court to look through his Petition [1] and to the underlying substance of the controversy between the parties to ascertain the amount in controversy. *See id.*

While that approach is appropriate when a party files a motion to compel arbitration under 9 U.S.C. § 4, the Supreme Court has held that the "same 'look-through' approach to jurisdiction [does not apply] to requests to confirm or vacate arbitral awards under the FAA's Sections 9 and 10," because the language of Section 4 directing the "look-through" approach is absent from these other statutes. *Badgerow v. Walters*, 596 U.S. 1, 5 (2022). "Congress has not authorized a federal court to adjudicate a Section 9 or 10 application just because the contractual dispute it presents grew out of arbitrating different claims, turning on different law, that (save for the parties' agreement) could have been brought in federal court." *Id.* at 12. A Section 9 or 10 "application concerns the contractual rights provided in the

arbitration agreement, generally governed by state law," "[a]nd adjudication of such state-law contractual rights . . . typically belongs in state courts." *Id.* at 18.

Pasulo has not attached any order from AAA, and the only clue he has provided regarding the AAA dismissal comes from his response to Wells Fargo's counterclaim in the arbitration proceeding. *See* Ex. [3-1] at 95. According to him,

> [d]uring a Wells Fargo internal mediation program which took place over the phone, Mr. Pasulo was offered a check for $555.56. During the taped conversation, Mr. Pasulo asked directly if by accepting the check if it would affect his ongoing suit with Wells Fargo, and Mr. Pasulo was given the answer as, "no". [sic] Mr. Pasulo would like to request a copy of the tape that recorded the conversation during this mediation.
> * * *
> Mr. Pasulo did not understand completely how the arbitration process worked. To Mr. Pasulo's understanding he would be contacted later concerning arbitration. Mr. Pasulo filed the state action for trial because he thought the courts would not. Mr. Pasulo immediately filed for arbitration as soon as he was able, once he spoke with a Wells Fargo attorney over the phone.

*Id.*

In light of *Badgerow*, 596 U.S. at 5, Pasulo has not adequately shown what the value of the right to be protected or the extent of the injury to be prevented in this action is, *see St. Paul Reinsurance Co.*, 134 F.3d at 1253. Nor is this a case originally brought in this Court under federal jurisdiction that was later compelled to arbitration and then stayed. *See, e.g., Jules*, 146 S. Ct. at 1214-16 (holding that, "[b]ecause a federal court in this scenario has jurisdiction over the original claims and does not lose that jurisdiction while the case is stayed pending arbitration, it retains jurisdiction to determine whether the arbitral award resolving those claims is valid and should be confirmed," unlike a "freestanding" FAA motion that requires

an independent jurisdictional basis in accordance with *Badgerow*, where a federal court "may not look through that motion to a controversy involving a federal issue that is 'not before the court' in order to establish jurisdiction" (quoting *Badgerow*, 596 U.S. at 5)).   In a freestanding motion, such as the one in this case, the issue becomes "the enforceability of an arbitral award," which is "no more than a contractual resolution of the parties' dispute—a way of settling legal claims." *Badgerow*, 596 U.S. at 9.

The arbitrator in this case issued a dismissal, which Pasulo seeks to vacate, but he has not adequately addressed what value that equates to in terms of the amount in controversy.  *See id.*; Pet. [1]; Resp. [3]; *see also Ascension Data & Analytics, L.L.C. v. Pairprep, Inc.,* 105 F.4th 749, 754 n.7 (5th Cir. 2024), *cert. denied,* 145 S. Ct. 595 (2024) (holding that an application to vacate an arbitration award was "an attempt to relitigate a res judicata defense that was first raised— and rejected—during the arbitration proceeding," which would have necessarily required the district court to "look through the application to vacate to the res judicata defense in the underlying arbitration to establish its jurisdiction on this basis," which it "correctly declined to do" in light of *Badgerow*).[1]  Following

---

[1]  *But see, e.g., Tesla Motors, Inc. v. Balan*, 134 F.4th 558, 561 (9th Cir. 2025) ("On its face, a petition to confirm a zero-dollar award cannot support the amount in controversy requirement.");  *Leyb v. Tinder LLC*, No. 3:25-CV-3059-K, 2026 WL 280181, at *2 (N.D. Tex. Feb. 3, 2026) (holding that a federal petition to vacate an arbitration decision that dismissed a petitioner's tort claims, where the petition alleged that the value of the extinguished claims exceeded $75,000.00, did not demonstrate that the amount in controversy was satisfied because the court was precluded from looking through to the issues presented in the underlying arbitration and the demand made therein under *Badgerow*).

*Badgerow*'s instruction that the Court look to "the face of the application itself," 596 U.S. at 9, the Petition [1] states that during arbitration, Petitioner "presented evidence that approximately $41,450 was withdrawn [from his Wells Fargo account] without his knowledge or authorization," Petition [1] at 2 (emphasis removed). This falls well below the jurisdictional threshold, *see* 28 U.S.C. § 1332(a)(1), and Pasulo has not demonstrated that federal subject-matter jurisdiction exists, *see id.*

Even if the Court were to look through the freestanding Petition [1] in this case, in spite of the Supreme Court's controlling authority, Pasulo has not supplied a copy of his complaint or the claim he filed in the arbitration proceeding. In the pro se state-court complaint that triggered the arbitration, Pasulo merely demanded judgment from Wells Fargo "in the amount of $50,000, court costs plus any additional costs and fees which may accrue in this matter," Ex. [3-1] at 82, which would not confer original diversity jurisdiction upon a federal court, *see* 28 U.S.C. § 1332(a). Nor did the state-court complaint demand punitive damages, which Pasulo now attempts to invoke in his Response [3] to the Order [2] to Show Cause. *See* Ex. [3-1] at 82. Pasulo has not carried his burden of showing diversity jurisdiction existed at the time the Petition [1] was filed in this Court. *See* 28 U.S.C. § 1332(a); *Bynane*, 866 F.3d at 356.

## III.  CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Petitioner Antonio Pasulo's Petition [1] to Vacate Arbitration Award is **DISMISSED**

**WITHOUT PREJUDICE**, for lack of subject-matter jurisdiction.  A separate Final

Judgment will be entered pursuant to Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 10th day of July, 2026.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE